UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Shirley A. Holland,

                                        Plaintiff,

        -v.-                                 7:05-CV-0384
                                               (NPM)

Commissioner of Social Security,

                                      Defendant.

| APPEARANCES: | OF COUNSEL: |
| --- | --- |

FOR THE PLAINTIFF:

| Conboy, McKay, Bachman & Kendall, LLP <br> 307 State Street <br> Carthage, New York 13619 | Lawrence D. Hasseler |

FOR THE DEFENDANT:

| Andrew T. Baxter <br> United States Attorney <br> 100 South Clinton Street <br> Syracuse, NY 13261-7198 | William H. Pease, AUSA |

| Barbara L. Spivak <br> Chief Counsel - Region II <br> Office of the General Counsel <br> 26 Federal Plaza – Room 3904 <br> New York, New York 10278 | Dennis J. Canning, <br> Assistant Regional Counsel |

Neal P. McCurn, Senior District Judge

### *Memorandum, Decision and Order*

### *I.  Introduction*

By this action, plaintiff Shirley A. Holland ("plaintiff") timely seeks judicial review of a final decision by defendant, Commissioner of Social Security ("the Commissioner"), denying her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits for lack of disability, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Presently before the court is a motion for judgment on the pleadings by plaintiff, and a cross-motion for judgment on the pleadings by defendant, pursuant to Fed. R. Civ. P. 12(c).  Plaintiff seeks an order granting her motion for judgment on the pleadings with a determination that she is disabled within the meaning of the Social Security Act, or an order remanding this matter to the Social Security Administration ("SSA") for further consideration.  The Commissioner opposes, and seeks an order affirming its decision.  The parties have filed their respective briefs, including the Administrative Record on Appeal, and the matter has been submitted and considered without oral argument.  For the reasons set forth below, the Commissioner's finding that plaintiff is not disabled within the meaning of the Social Security Act is remanded for further consideration consistent with this memorandum, decision and order.

### *II.  Procedural Background*

Plaintiff initially applied for SSDI and SSI benefits on August 13, 2001.  (R.

96-98).[1]  The application was denied, and plaintiff timely requested a hearing, which was held before an Administrative Law Judge ("ALJ") on February 24, 2003.  (R. 456-515).  The ALJ issued an unfavorable decision on June 10, 2003, after which plaintiff sought Appeals Council review.  (R. 42-52).  The Appeals Council remanded the case to the ALJ for further proceedings.  Plaintiff appeared before the ALJ for another hearing on March 23, 2004.  (R. 516-544).  On November 10, 2004 the ALJ found that plaintiff was not disabled, which became the final decision of the Commissioner on April 4, 2005 when the Appeals Council denied plaintiff's request for review.  (R. 20-29).  This timely civil action followed.

### III.  Factual Background

Plaintiff Holland, born March 29, 1955, was 49 at the time of the Commissioner's decision at issue here.  (R. 27, 93).  Plaintiff has a high school education, and has past relevant work as a certified nurse's aide ("CNA"), laborer at a linen factory, and cashier.  (R. 157).  Plaintiff alleges that she has been unable to work due to a disability since May 30, 2001.  (R. 96).  According to plaintiff, several medical conditions keep her from working, including arthritis, chest pain and depression.  (R. 156).  The medical evidence of record will be subsequently addressed where relevant.

### IV.  Discussion

---

[1] Plaintiff previously filed an initial application for SSDI and SSI benefits on September 8, 1998, which was later denied.  (R. 93-95; 57-58).  Despite the fact that plaintiff never appealed this denial, she alleges an initial application date of September 9, 1998 in support of her motion for judgment on the pleadings.  See Pl.'s Br., at 1, Dkt. No. 8.  It is clear, however, that Plaintiff seeks judicial review regarding the Commissioner's final decision as to Plaintiff's August 13, 2001 application for benefits.  The court will proceed accordingly.

This court does not review a final decision of the Commissioner *de novo*, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citation omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004).  When determining whether substantial evidence supports the Commissioner's decision, a court evaluates the record as a whole. See Curry v. Apfel, 209 F.3d 117, 121 (2d Cir. 2000) (internal citation omitted). "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-445 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall [...] enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner [...], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See also 42 U.S.C. § 1383(c)(3). See also Butts, 388 F.3d at 385.

An individual is "disabled" for purposes of his or her eligibility for SSDI or SSI if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or

4

> which has lasted or can be expected to last for a
> continuous period of not less than twelve months.

42 U.S.C. § 1382c.  See also 42 U.S.C. § 423(d).  The Commissioner may deem an

individual applicant for SSDI or SSI to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 1382c; § 423(d).

SSA regulations set forth a five-step sequential evaluation process, by

which the Commissioner is to determine whether an applicant for SSI is disabled

pursuant to the aforementioned statutory definition.  See 20 C.F.R. §§ 404.1520

and 416.920.  The Second Circuit Court of Appeals aptly summarizes this process

as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits her capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the

> residual functional capacity to perform her past relevant
> work. Finally, if the claimant is unable to perform her
> past relevant work, the Secretary determines whether the
> claimant is capable of performing any other work. If the
> claimant satisfies her burden of proving the requirements
> in the first four steps, the burden then shifts to the
> Secretary to prove in the fifth step that the claimant is
> capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

Here, the ALJ first found that plaintiff did not engage in substantial gainful activity at any time since her alleged disability onset date. (R. 21). Next, the ALJ concluded that plaintiff's major depressive disorder was not severe, but that she had severe physical impairments, including cervical spondylosis at C5-6 and C6-7, cervical radiculopathy and lumbar spine degenerative changes. (R. 23-24). The ALJ next found that plaintiff's physical impairments were not listed in Appendix 1 of the regulations. See 20 C.F.R. Pt. 404, Subpt. P, App.1. Finally, the ALJ concluded that while plaintiff possesses the residual functional capacity ("RFC") to perform light work, (R. 25), the exertional requirements of her past relevant work as a nurse's aide are heavy in nature and therefore exceed her current RFC, (R. 27). Taking into consideration plaintiff's age, education and past relevant work experience, the ALJ concluded that because plaintiff "can perform the demands of a wide range of light work, and there are no significant nonexertional limitations compromising this [RFC], a finding of 'not disabled' is warranted by the Medical-Vocational Rules 202.20-22 and SSRs 96-8p and 96-9p." (R. 28).

Plaintiff opposes the ALJ's determination that she is not disabled within the

6

meaning of the Social Security Act for the following reasons.  Plaintiff alleges that (1) the Commissioner failed to properly consider and weigh the medical evidence and opinions of record; (2) the Commissioner failed to properly assess the severity of Plaintiff's conditions; (3) the Commissioner erroneously failed to follow the required steps in considering plaintiff's mental disorder; (4) the Commissioner failed to properly calculate plaintiff's RFC; and (5) there is no substantial evidence to support the Commissioner's conclusion that there is significant work in the national economy that plaintiff could perform. The Commissioner opposes plaintiff's contentions, and argues that substantial evidence supports the decision that plaintiff was not disabled from her alleged onset date, May 30, 2001, through November 10, 2004, the date of the Commissioner's final decision.

### A.  Severity of Impairments

Because many of plaintiff's contentions are based at least in part on the Commissioner's treatment of her mental impairment, the court will initially address the issues surrounding same.  Plaintiff alleges that her mental impairment, diagnosed as major depressive disorder, is severe.  When evaluating the severity of a mental impairment, the Commissioner must follow regulations which require the application of a "special technique" at steps two and three of the five-step analysis.  See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a(a)).  See also § 404.920a.

> This technique requires the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.' § 404.1520a(b)(1).  If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' § 404.1520a(b)(2), which specifies four broad

7

> functional areas: (1) activities of daily living; (2) social functioning;
> (3) concentration, persistence, or pace; and (4) episodes of
> decompensation. § 404.1520a(c)(3).  According to the regulations, if
> the degree of limitation in each of the first three areas is rated mild' or
> better, and no episodes of decompensation are identified, then the
> reviewing authority generally will conclude that the claimant's mental
> impairment is not 'severe' and will deny benefits. § 404.1520a(d)(1).
> If the claimant's mental impairment is severe, the reviewing authority
> will first compare the relevant medical findings and the functional
> limitation ratings to the criteria of listed mental disorders in order to
> determine whether the impairment meets or is equivalent in severity
> to any listed mental disorder. § 404.1520a(d)(2).  If so, the claimant
> will be found to be disabled.  If not, the reviewing authority will then
> assess the claimant's [RFC]. § 404.1520a(d)(3).

Id., at 265-66 (footnote omitted).  It is important to note that the regulations require the ALJ to document this process in a written decision, which must "reflect application of the technique, and explicitly provide that the decision 'must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'"  Id. at 266 (citing § 404.1520a(e)(2); § 404.1520a(c)(3) (specifying the four functional areas central to the special technique)).

Here, the ALJ credited the opinion of Aaron Satloff, M.D., an independent medical expert, (R. 442-448), which was based on a review of the medical evidence, including the exam notes of consultative examiner William Kimball, Ph.D., (R. 252-256), treatment records from Ogdensburg Mental Health Clinic, (R. 318-351) and treatment records from St. Lawrence Psychiatric Center (R. 406-422).  (R. 23).  The ALJ noted, and the record reflects that Dr. Satloff "verified that the claimant's condition showed a documented history of symptoms and signs consistent with major depressive disorder" but that her condition was of

inadequate severity to meet or equal any impairment in the Listing of Impairments set forth in Appendix I. (R. 23; 442).  The ALJ also noted, and the record reflects that Dr. Satloff indicated that "the claimant's condition . . . did not impose limitations in [her] ability to understand, remember and carry out simple job instructions, respond to supervisors, co-workers and usual work situations, [and] deal with changes in a routine work setting."  (R. 23; 446-447).  The ALJ further noted that Dr. Satloff also found that plaintiff's condition did not impose limitations on her ability to maintain attention and concentration.  (R. 23).  However, the record of Dr. Satloff's medical opinion does not support the ALJ's conclusion in this regard as there is no mention of the ability to maintain attention and concentration in Dr. Satloff's report.  (R. 442-447).  The ALJ went on to conclude that although plaintiff's condition "may be severe, it does not meet the threshold requirements of an impairment imposing significant work-related limitations in functioning for a period of 12 continuous months."  (R. 23).  Further, the ALJ concluded, based on Dr. Satloff's report, that "it is reasonable to conclude that the claimant has the ability to perform the mental demands of competitive work on a sustained basis and that she does not have a nonexertional malady that would limit her ability to understand, remember and carry out simple job instructions, respond to supervisors, co-workers and usual work situations, deal with changes in a routine work setting and maintain attention and concentration for a period of 12 continuous months at anytime germane to the adjudicative period."  (R. 23-24).

The Second Circuit has made clear that the Commissioner's regulations require an ALJ to apply  the "special technique" when evaluating the severity of

mental impairments, see §§ 404.1520a and 416.920a, and that such application must be documented.  See Kohler, 546 F.3d at 266 (citing § 404.1520a(e)).  Here, the ALJ failed to document his conclusion that plaintiff's condition was not severe.  Instead, he relied on Dr. Satloff's conclusion that while plaintiff has a medically determinable mental impairment, to wit, major depressive disorder, that impairment does not meet or equal any impairment described in the Listing of Impairments because it is "[o]f inadequate severity to qualify."  (R. 442).  No discussion of the rate or degree of functional limitations resulting from plaintiff's impairment, which analysis is necessary to determine whether an impairment is severe in accordance with § 1520a, was included in the ALJ's decision, nor did Dr. Satloff include any discussion of same in his report.  Moreover, a review of the record reflects that substantial evidence regarding plaintiff's functional limitations is lacking.  Accordingly, this case is remanded to the Commissioner for further development of the record and appropriate application and documentation of the special technique for evaluating mental impairments at 20 C.F.R. §§ 404.1520a and 416.920a.

Plaintiff further alleges that she has various other conditions which are severe impairments, including a respiratory condition and joint effusion and osteoarthritis in her left knee, both of which the ALJ considered and deemed not severe.  (R. 23).  Plaintiff further alleges other severe impairments, including chest pain, radicular leg pain, and "leg numbness and tingling, incontinence while standing, and left sided neck, shoulder, and arm pain[.]" Pl.'s Br. at 18-19.  However, plaintiff's allegations in this regard are not supported by the record.  To begin with, plaintiff alleges that her radicular leg pain significantly affects her

ability to work, but cites as evidence medical records which pre-date her alleged onset date. (R. 216, 221). Also, as the Commissioner correctly points out, the record reflects that plaintiff's alleged joint effusion and osteoarthritis in her left knee resolved itself. (R. 23, 370-371, 390).

Plaintiff also alleges that her chest pain contributes to her inability to work, as it is brought on by exertion. However, in support of same, plaintiff cites June 2001 treatment notes of a nurse practitioner, recording plaintiff's report of symptoms. (R. 245). Later records indicate plaintiff denied that her chest pain was related to any physical activity (R. 281). Moreover, results of a stress echocardiogram reflect that plaintiff did not feel chest pain at ninety-five percent of her target heart rate and that she has "2+ aortic incompetence" with a recommendation of prophylactic antibiotics prior to any future dental work. (R. 288). Nor does the record support plaintiff's allegation that her respiratory condition is severe. As the ALJ noted, plaintiff reports an average of one or two asthma attacks per year and has never sought emergency room care or been hospitalized for this condition. (R. 23, 247). Finally, plaintiff's allegations that the ALJ erred by failing to find her remaining impairments severe is belied by the record. Plaintiff's alleged hand and leg pain and numbness, neck and shoulder pain and incontinence are all symptoms related to plaintiff's lower back condition, which the ALJ found to be severe. (R. 22-23). Accordingly, the court will not disturb the ALJ's conclusion regarding the severity of plaintiff's physical evidence, as substantial evidence supports same.

### B. Residual Functional Capacity

Here, the ALJ concluded that plaintiff "retains the [RFC] during the course

of an 8-hour workday to lift/carry 20 lbs. frequently, 10 lbs. occasionally, stand/walk for at least 2 hours and sit for about 6 hours, consistent with light exertional activity." (R. 25). Plaintiff alleges that the ALJ erred in calculating her RFC because he (1) failed to assign limitations based on her mental impairment, (2) issued contradictory findings that plaintiff could perform light work and that she could only perform the demands of sedentary work, and (3) failed to accept the opinions of treating physicians, Drs. Ali and Peets.

Because the court has determined that remand is necessary for the Commissioner to apply the special technique to determine whether plaintiff's mental impairment is severe, it necessarily follows that upon remand, should the ALJ find plaintiff's mental impairment to be severe, he must also make an amended determination of plaintiff's residual functional capacity, taking into consideration her nonexertional limitations.

Regarding plaintiff's argument that the ALJ erred by making "contradictory" findings that she could perform the demands of both light and sedentary work, the regulations clearly state that "if someone can do light work, we determine that he or she can also do sedentary work[.]" 20 C.F.R. § 404.1567(b); 416.967(b). Accordingly, the ALJ's conclusion in this regard is not contradictory.

Plaintiff finally alleges that the ALJ erred by not accepting the opinions of her treating physicians, Drs. Ali and Peets. According to plaintiff, the ALJ was required to accept Dr. Ali's opinion, rendered in December 2002, that she "suffers 'permanent disability' due to her spinal stenosis, DDD of her spine, disc bulging, chronic back pain, and disc herniation." Pl.'s Br., at 23, citing (R. 352). Plaintiff

notes that the Appeals Council specifically cited this opinion and required the ALJ to give it further consideration, but the ALJ failed to do so, requiring remand by this court for further consideration.  See Pl.'s Br. at 12.

To begin with, the cited opinion of Dr. Ali was rendered in the context of plaintiff's application for license plates or parking permits for people with severe disabilities.  (R. 352).  As the Commissioner correctly points out, it is well settled that the responsibility to decide whether an applicant for SSDI or SSI is disabled within the meaning of the Social Security Act rests solely with the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2) and  416.927(e)(2).  Accordingly, the ALJ was not required to accept Dr. Ali's conclusion that she has a permanent disability, especially when given in support of her application for a benefit from another government agency.

As for plaintiff's argument that remand is required due to the ALJ's failure to adhere to the Appeals Council's directive to consider Dr. Ali's opinion, this court disagrees.  By statute, this court's jurisdiction extends to the final decision of the Commissioner, which in this case is the ALJ's second decision.  See Gabaldon v. Barnhart, 399 F.Supp.2d 1240, 1251 (D.N.M. 2005) (citing Gallegos v. Apfel, 141 F.3d 1184 (10th Cir. 1998) (citing 42 U.S.C. § 405(g); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992))).  But see Lok v. Barnhart, No. Civ.A. 04-3528, 2005 WL 2323229, at * 6 (E.D. Pa. Sept. 19, 2005); Pettaway v. Astrue, No. CA 08-0171-C, 2008 WL 5111175, at *4 (S.D.Ala. Dec. 3, 2008) (both cases remanding for failure to abide by the Appeals Council's instructions). Accordingly, remand is not appropriate on this basis.

Plaintiff also argues that the ALJ erred in not accepting the June 2004

13

opinion of her treating physician, Dr. Shara K. Peets.  A treating physician's opinion is entitled to "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  See also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  Where less than controlling weight is assigned to a treating physician's opinion, the ALJ must consider a number of factors, including, among others,

> the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

Id. (quoting 20 C.F.R. § 404.1527(d)(2)) (quotations omitted).  After considering these factors, "the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."  Burgess, 537 F.3d at 129 (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir.2004)).  Where the opinion of a treating physician is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, and is not based on clinical findings, the ALJ is not compelled to assign controlling weight to that opinion.  See Owens v. Astrue, No. 5:06-CV-0736, 2009 WL 3698418, at *3 (N.D.N.Y. Nov. 3, 2009) (citing Halloran, 362 F.3d at 32; 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)).

Here, in a June 2004 letter to plaintiff's attorney, after summarizing plaintiff's history of back and neck pain, as well as her occupational history and daily activities,  Dr. Peets opined that plaintiff's "ability to do work related

14

activities is severely limited in regard to lifting, pushing and pulling or prolonged maintenance of postural activities." (R. 441). In support of his opinion, Dr. Peets noted that plaintiff uses a cane for ambulation and "[p]ositive physical findings include impaired touch and pinprick sensation in generalized location of the left arm and leg and lumbar spine tenderness." (R. 441).

The ALJ, in determining that plaintiff retains the RFC to perform light work, gave less than controlling weight to Dr. Peets's opinion, citing a lack of clinical findings to support the assessment, as well as other contrary substantial evidence. (R. 25-26). Specifically, the ALJ noted that "the tenor of [Dr. Peets's] treatment notes prior to the assessment merely indicate[] that the [plaintiff] needs to avoid heavy lifting." (R. 26). Further, as contrary substantial evidence, the ALJ relied on treatment notes as well as a Medical Source Statement of Ability to do Work Related Activities (Physical) completed by Ahmed Abdel-Aziz, M.D., (R. 26, 299-304, 353-357), as well as the opinion of a "State Agency review physician[,] (R. 26, 272-279).

The record reflects that Dr. Peets saw plaintiff five times between September and November 2003 for asthma, diarrhea, smoking cessation and possible celiac disease. (R. 391-395). There are no clinical findings in Dr. Peets's treatment notes to support his conclusion that plaintiff's work related abilities are severely limited. In fact, other than a note that plaintiff's neck pain is most likely related to her degenerative disc disease, the court is unable to discern the basis of the ALJ's finding that Dr. Peets felt plaintiff should avoid heavy lifting. Accordingly, the ALJ's conclusion that Dr. Peets's opinion was not based on

15

clinical findings is supported by substantial evidence.[2]

Regarding the ALJ's finding of substantial evidence that is contrary to Dr. Peets's opinion, plaintiff is correct that the ALJ relied on the statement of a disability analyst, which he erroneously set forth to be a State Agency review physician. The disability analyst completed a physical RFC assessment, noting that plaintiff can lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently and that plaintiff can stand or walk for a total of six hours and can sit for a total of six hours in an eight hour work day. (R. 272-279). Nonetheless, the ALJ also relied on the April 2003 opinion of Dr. Abdel-Aziz that plaintiff can lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently and that plaintiff can stand or walk for at least two hours and can sit for about six hours in an eight hour work day. (R. 353-356). The record further reflects that Dr. Abdel-Aziz saw plaintiff twice in August and September 2002 for pain issues relating to her degenerative disc disease. (R. 299-304). Dr. Abdel-Aziz further noted clinical findings that plaintiff was "found to have lower lumbar spine degenerative disc disease with tightness in bilateral paraspinous muscle from mid-to-low lumbar spine . . . [and] facet anthropathy as evidenced with [increased] pain or extension and lateral rotation of L-spine as well as

---

[2] The court gives short shrift to plaintiff's argument that "various laboratory and diagnostic techniques" support Dr. Peets's opinion that her work abilities are severely limited. See Pl.'s Br. at 13-15. Plaintiff cites evidence that was gathered prior to plaintiff's alleged onset date, is contradicted by other evidence in the record that the alleged condition was eventually resolved, or most troubling, contradicts Dr. Peets's opinion. For example, plaintiff cites September 2001 findings of Dr. Dutta regarding her limitations in range of motion, but fails to identify for the court the ultimate conclusion of Dr. Dutta that plaintiff's condition is "stable" and that she has "mild limitations of standing, sitting, walking and lifting heavy weights for a long period of time." (R. 248).

sacroiliac joint disorder as evidenced with tenderness over bilateral SI joints" in support of his assessment of plaintiff's exertional limitations. (R. 353-356). Accordingly, because substantial evidence exists which is contrary to the opinion of Dr. Peets, the ALJ did not err in assigning Dr. Peets's opinion less than controlling weight. The ALJ's error in relying on the opinion of a disability analyst is harmless, as the opinion of Dr. Abdel-Aziz mirrors that of the analyst in all relevant aspects.

The ALJ also notes, as is supported by the regulations, that light work involves lifting no more than twenty pounds at a time with frequent lifting of up to ten pounds. (R. 27). See also 20 C.F.R. §§ 404.1567(b) and 416.967(b). This finding mirrors that of Dr. Abdel Aziz as it relates to plaintiff's limitations, but differs from the ALJ's finding that the plaintiff retains the RFC for light work based on the finding that she has the capacity to lift/carry twenty pounds frequently and ten pounds occasionally "consistent with light exertional activity." (R. 25). Because substantial evidence supports the ALJ's ultimate conclusion that plaintiff retains the physical RFC for light work, the court will not disturb same, despite the ALJ's error in reporting plaintiff's limitation based on said evidence. It is important to re-emphasize, however, that upon remand, should the ALJ find plaintiff's mental impairment to be severe, he must also make an amended determination of plaintiff's residual functional capacity, taking into consideration her nonexertional limitations.

Finally, plaintiff argues that the ALJ erred at step five of the analysis when he concluded that there is other gainful work in the national economy [which] plaintiff could perform. As previously discussed, this case is remanded to the

Commissioner for further development of the record and appropriate application and documentation of the special technique for evaluating mental impairments at 20 C.F.R. §§ 404.1520a and 416.920a.  Accordingly, upon remand, should the ALJ find plaintiff's mental impairment to be severe, he must also make an amended determination of plaintiff's residual functional capacity, taking into consideration her non-exertional limitations, and if necessary, revisit step five of the sequential evaluation process.

## *V.  Conclusion*

For the reasons set forth above it is hereby ORDERED that defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part, and it is further

ORDERED that plaintiff's motion for judgment on the pleadings is DENIED in part and GRANTED in part, and it is further

ORDERED that the case be REMANDED to the Commissioner pursuant to 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.


IT IS SO ORDERED.



DATED:      November 12,  2009
            Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge

18